GRAMMAS v. KETTLE.

1. MARRIAGE—COMMON-LAW MARRIAGE.

A common-law marriage is recognized in Michigan if it is shown that there was a present agreement between the parties to take each other as husband and wife followed by cohabitation.

2. SAME—INVALID COMMON-LAW MARRIAGE—REMOVAL OF IMPEDIMENT.

Where parties engage upon a contract of marriage which is void because one has a living lawful spouse, and there is uninterrupted cohabitation and reputation after removal of the impediment, a valid common-law marriage will be produced although the fact of the impediment or of its removal may not have been known to either (3 Comp. Laws 1929, § 12723).

3. SAME—COMMON-LAW MARRIAGE INVALID IN STATE WHERE CONSUMMATED—REMOVAL TO STATE WHERE VALID.

Parties to a common-law marriage, invalid in Illinois where consummated, who moved to this State, continued their cohabitation, held themselves out to the community, purchased real estate and filed application for a Federal loan as husband and wife, may be said to have continued the original agreement from day to day or its existence may be inferred after removal of the impediment from facts stated (Ill. Rev. Stat. 1941, chap. 89, § 4).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 11, 1943. (Docket No. 66, Calendar No. 42,411.) Decided September 7, 1943.

Bill by Michael Grammas against Lela Kettle to determine that there never was a marriage between the parties and to enjoin defendant from pretending to be the wife of plaintiff. Decree for plaintiff. Defendant appeals. Reversed.

*Roscoe G. Goembel,* for plaintiff.

*Fred A. Sauer,* for defendant.

CHANDLER, J. Plaintiff filed his bill of complaint alleging that defendant was pretending to be his wife, although no marriage had ever existed between the parties, and praying for a decree adjudicating that no marriage existed or ever had, and for an injunction restraining defendant from claiming and pretending that she was his wife. The trial court entered a decree granting the relief sought and defendant has appealed.

The testimony showed that the parties became acquainted in April of 1928 while living in Chicago, at which time they commenced living together in the Alto Hotel in said city. Defendant testified that at that time a ceremonial marriage could not be had because of the regulations of her church and that at plaintiff's suggestion "we agreed that we be with each other as husband and wife for the present and cohabit the rest of our lives."

In August of 1928, they came to Van Buren county in this State where they purchased a small farm. Defendant had employment in Chicago and continued to work there and occasionally visit plaintiff, mostly on week-ends. The property so purchased was bought on a land contract in which plaintiff and defendant, as husband and wife, were named as the vendees. Later, they purchased another small farm near Bangor, Michigan, as husband and wife. An application filed for a Federal loan represented that the parties were married.

In 1935 or 1936, defendant gave up her employment in Chicago and came to Bangor to live with defendant where they resided until 1938, moving then to Kalamazoo. From the time defendant came

to Bangor until the spring of 1940 they lived together continuously, at all times holding themselves forth in the community as man and wife. In the spring of 1940, defendant returned to Chicago to find employment but was unable to do so. She returned to Kalamazoo shortly thereafter but apparently did not find plaintiff. In August of 1940, she filed suit for separate maintenance which was later dismissed because, as she testified, she found employment and there was then no need for support from plaintiff.

The foregoing facts as to cohabitation and holding out as husband and wife were not disputed by plaintiff. However, he testified that the only conversation the parties had relative to marriage was after they came to Michigan when he wanted her to go to Indiana and "make it legal," apparently referring to a ceremonial marriage. He testified:

"*Q.* What talk did you and she have about marriage?

"*A.* The only talk we had is when I asked her to go to Indiana and make it legal.

"*The Court:* Make what legal?

"*A.* The marriage. She knew it was an illegal marriage as well as I did, that is why I wanted to get married legally."

He claimed she refused to go to Indiana for this purpose. Defendant testified that the reason they didn't go to Indiana was because they were financially unable to do so. In his testimony, plaintiff does not refute, except by inference, defendant's claim as to the agreement made between them when they started to live together in Chicago.

Common-law marriages are prohibited in the State of Illinois by statute.* In this State, such a

---

* See Illinois Rev. Stat. 1941, chap. 89, § 4.—REPORTER.

marriage is recognized if it is shown that there was a present agreement between the parties to take each other as husband and wife followed by cohabitation. See *In re Meredith's Estate*, 279 Mich. 298, and cases cited therein. It appears to be the theory of plaintiff that as the marriage was invalid in Illinois, it could not become valid because the parties moved to Michigan unless a new present agreement was made that they take each other as husband and wife.

Although plaintiff argues that this is not a case where an impediment to an invalid marriage has been removed, such as the death of a prior spouse or the dissolution of a prior marriage, and a subsequent valid common-law marriage has been held to exist, we are unable to determine the point of distinction. In *Hess* v. *Pettigrew*, 261 Mich. 618, the ceremonial marriage between the parties was void *ab initio* because of the existence of a valid marriage between the defendant and another man. 3 Comp. Laws 1929, § 12723 (Stat. Ann. § 25.81). In holding a valid common-law marriage to exist after removal of the impediment, the court said (p. 622):

"While there is some difference of reasoning and ruling, the decided weight of authority is that where parties engage upon a contract of marriage, which is void because one has a living lawful spouse, which is unknown to one or both, uninterrupted cohabitation and reputation after removal of the impediment will produce a valid common-law marriage, although the fact of the impediment or of its removal may not have been known to either. The principal reasons upon which the rule rests are that the initial relationship was intended to be matrimonial, not illicit, and consent to present marriage evidenced by the ceremony continues from day to day and becomes effective as a present taking in marriage on removal of the impediment. * * *

"After the Howe divorce both parties were competent to contract marriage. In all respects each considered and treated the other as a lawful spouse, so held out their relationship to the world and they were so accepted. The only questionable element of the relationship is whether they took each presently as husband and wife. The reasoning that the consent and taking manifested by the former ceremony and cohabitation thereunder was a continuing state, renewed constantly and operated as a present taking when the impediment was removed, fits snugly into the law of marriage and accords with the public policy relating to it. If, however, express statement and present recognition of the relationship of marriage be necessary, it is sufficiently found in the instant case, aside from the cohabitation, holding out as married and being so accepted, having a joint bank account and the like, in letters written by plaintiff to defendant after the Howe divorce, addressing defendant as his wife and signing as her husband. *Goodspeed* v. *Goodspeed*, 204 Mich. 44; *Severance* v. *Severance*, 197 Mich. 327; *Peet* v. *Peet*, 52 Mich. 464."

In the instant case, we find that the agreement claimed by defendant to have been made in Chicago was consummated. Neither party, as far as the record discloses, suspected that such an arrangement was illegal under the law of Illinois. Upon moving to Michigan, the statutory impediment to a common-law marriage was removed and its removal was not substantially different from removal of an impediment created by the existence of a valid prior marriage. If defendant's testimony as to the original agreement is accepted, which we must accept, the agreement can be said to have continued from day to day, or its existence inferred after removal of the impediment from such facts as the holding out as being married and acceptance as such

by the public, execution of the contracts as husband and wife, and representation of the existence of the marital status in connection with the application for the Federal loan. All the requisites necessary to the creation of a valid common-law marriage after removal of the statutory impediment are present and the trial court erred in decreeing otherwise.

For a general discussion of cases involving the question, see 104 A. L. R. p. 31.

The decree of the trial court is reversed and one may be entered in accordance with this opinion, with costs to appellant.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.