## UNITED STATES v. JACKSON.
### No. 3713.

District Court, E. D. Michigan, S. D.
Feb. 29, 1944.

John C. Lehr, U. S. Atty., and Louis M. Hopping, Asst. U. S. Atty., both of Detroit, Mich., for plaintiff.

William G. Comb, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

### Findings of Fact.

1. This is an action pursuant to Section 338 of the Nationality Act of 1940, 8 U.S.C.A. § 738, seeking cancellation of citizenship certificate number 4496698, issued in this court on November 21, 1938, to Irving Jackson, defendant herein. The following facts alleged in the complaint are admitted in the answer. Defendant filed his declaration of intention on June 26, 1931, in the United States District Court for the Northern District of California, and filed his petition for citizenship on June 16, 1938, in this court. He was admitted to citizenship in this court on November 21, 1938, after a hearing on his said petition before the court, and he thereupon took the prescribed oath of allegiance and the certificate of citizenship was issued to him.

In 1938, when this certificate was granted, it was customary for the designated examiners to conduct an examination on the same date the petition for citizenship was accepted for filing. At this time the applicant and his two witnesses were sworn and ordinarily the examiner decided on the basis of this hearing whether he would recommend to the court at a later date that the petition be granted. It will be noted that five months elapsed between the time of the examination and the time the certificate was granted, and there is nothing to indicate that any further investigation was made by the examiner and nothing to indicate whether the certificate was granted solely on the recommendation of the designated examiner or whether the judge conducted a further hearing. The generally accepted practice in this district was to accept the findings of the designated examiner and approve his recommendation.

2. Paragraph 3 of the complaint charges: "That the said Irving Jackson alleged under oath in said petition for citizenship that he was married, that the name of his wife was Lillian, that they were married on January 2, 1932, at San Francisco, California, and that she resided at Detroit Michigan. * * *" This paragraph is admitted in defendant's answer.

3. Paragraph 4 of the complaint reads as follows: "That in truth and in fact the said Irving Jackson was not married to the said Lillian Meisler who was named by him as his wife in said petition for citizenship but lived with her illicitly as man and wife from January 2, 1932, to June 15, 1938, when she left him; that said Irving Jackson married Clara Goodman on September 28 1938; that following his marriage to the said Clara Goodman, the said Lillian Meisler made a complaint to the Prosecutor's Office at Detroit, Michigan, charging the said Irving Jackson with bigamy; that he was tried on this charge in the Recorder's Court, Detroit, Michigan, on October 26, 1939, which found that he was the legal husband of Clara Goodman and that no valid common law relationship existed between him and the said Lillian Meisler." The facts set forth in this paragraph were admitted in substance in the answer with the explanation that at the time defendant made the statement that he was married to Lillian Meisler he was of the opinion and honestly believed that

he was legally married to her and that it was only after he had consulted with an attorney that he decided that this opinion was erroneous.

4. The trial was held in open court, and defendant was represented by counsel. From the evidence offered it was disclosed that defendant is 51 years of age, was formerly employed as a school teacher in the state of California. He was born in Russia in 1892 and arrived in this country in 1907. On January 2, 1932, at San Francisco, California, he started living and cohabiting with one Lillian Meisler. This relationship was entered into in good faith and both defendant and Lillian Meisler believed that they had consummated a valid marriage. Shortly thereafter they moved to Michigan and up to the date that he filed his petition for citizenship on June 16, 1938, he at all times held himself out to be the husband of Lillian Meisler. No children were born to this union. There is no claim that during the time defendant was living with Lillian Meisler as her husband he did not faithfully live up to his duties and obligations as a husband and that he did not at all times act in strict accordance with what he understood the law to be with reference to common law marriages.

5. For the purpose of instituting divorce proceedings, in August, 1938, defendant consulted James E. Haggerty, a reputable, experienced attorney who has been a member in good standing of the bar of this court and of the state courts for twenty-one years. Defendant made a complete disclosure to Mr. Haggerty as to his relations with Lillian Meisler, and Mr. Haggerty made a study of the California and Michigan laws relating to common law marriages, and reached the conclusions that defendant was never legally married to Lillian Meisler and that there was no basis for a divorce proceeding. When defendant learned from his attorney that he did not need a divorce from Lillian Meisler and that the courts would be without authority to grant such a decree, he entered into a civil marriage with Clara Goodman. Subsequently, a Jewish ceremonial marriage was solemnized in accordance with the teachings of his religion. Thereupon Lillian Meisler, still believing herself to be defendant's legal wife, caused a complaint to be filed in the Recorder's Court for the city of Detroit charging defendant with bigamy in accordance with the provisions of the Michigan statute. This case came on for hearing on October 26, 1939, and defendant was represented by Mr. Haggerty as his attorney. After a full hearing defendant was acquitted.

6. The basis upon which the government seeks to have this certificate set aside is set forth in paragraph 5 of the complaint as follows:

"* * * the certificate * * * having been fraudulently and illegally procured, in that:

"(a) His allegations in said petition for citizenship that he was married and that the name of his wife was Lillian were wilfully and knowingly false.

"(b) He did not behave as a person of good moral character during the period required by law.

"(c) He was not attached to the principles of the Constitution of the United States and well disposed to the good and happiness of the United States."

7. The government has failed to prove by clear, unequivocal and convincing evidence that the statements made by defendant in his petition for naturalization that he was married and that the name of his wife was Lillian were knowingly and wilfully false. Quite the opposite, it is perfectly clear that at the time defendant made these statements there can be no question about his honest belief that they were true. There is no evidence of any perjury, concealment or misrepresentation. Throughout the time that defendant's petition for naturalization was pending he at all times answered all questions asked of him fully and truthfully in accordance with his then information and belief. There is no evidence upon which a finding could be predicated that the certificate was fraudulently obtained.

8. At the time the certificate of naturalization was granted the trial court must have found from the evidence before it that defendant had behaved as a person of good moral character during the period required by law. Aside from his unfortunate marital experiences there is nothing to indicate that this finding was not correct. It may be that the trial court was not fully advised of all of the facts relating to defendant's marital status at the time that his petition was considered and granted. If such an inquiry had been made and all of the facts disclosed, there is no reason why the petition could not have been granted. In order to find on this record that defend-

ant did not behave as a person of good moral character during the period required by law or that he was not attached to the principles of the Constitution of the United States and well disposed to the good and happiness of the United States, this finding would have to be based upon the theory that a person who honestly believed that he had entered into a valid common law marriage and who continued to live in this relationship up to the time that he was convinced that he was mistaken was not a person of good moral character. As was pointed out in Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273, the regulation of the marriage institution is confined solely to the states and the federal court's views as to the wisdom and morality of such regulations are immaterial. Assuming but not deciding that the question of defendant's good moral character could be relitigated at this time, the government has failed to prove by clear, unequivocal and convincing evidence that defendant did not behave as a person of good moral character during the period required by law.

9. The government has failed to offer any proof to sustain its charge that defendant is not attached to the principles of the Constitution of the United States and well disposed to the good and happiness of the United States. There is evidence that at all times he fully complied with all of the regulations of the Naturalization Department, and this action is based upon a voluntary statement that he made to a naturalization examiner in which he answered all of the questions that were asked fully and truthfully.

## Conclusions of Law

1. This action was brought under the Nationality Act of 1940, and this court has jurisdiction to determine the matters therein. 8 U.S.C.A. §§ 701 and 738.

2. "A denaturalization suit is not a criminal proceeding. But neither is it an ordinary civil action since it involves an important adjudication of status. Consequently * * * the Government should be limited, as in a criminal proceeding, to the matters charged in its complaint." Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 1353, 87 L.Ed. 1796.

3. To set aside a judgment of a court granting a certificate of naturalization the evidence must be clear, unequivocal and convincing. It cannot be done upon a bare preponderance of the evidence which leaves the issues in doubt. Schneiderman v. United States, supra; Tutun v. United States, 270 U.S. 568, 579, 46 S.Ct. 425, 70 L.Ed. 738; United States v. Ness, 245 U.S. 319, 325, 38 S.Ct. 118, 62 L.Ed. 321; Johannessen v. United States, 225 U.S. 227, 238, 32 S.Ct. 613, 56 L.Ed. 1066; United States v. Rovin, D.C., 12 F.2d 942, 944.

4. A statement made by petitioner for citizenship in accordance with his then information and belief is not a statement wilfully and knowingly false.

5. A person has a right to enter into a marital relationship in accordance with the provisions of the law of any state in which he happens to reside. Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273; Grammas v. Kettle, 306 Mich. 308, 10 N.W.2d 895. Upon the same basis a person has a right to terminate the marital relationship in accordance with the laws of the state in which he is domiciled. An attorney is an officer of the court in which he is authorized to practice and a layman has a right to follow the opinion of such an attorney in the regulation of his conduct when he honestly believes that such an attorney has competently and honestly advised him. There is much to be said in favor of the views expressed in the concurring opinion of Mr. Justice Rutledge in Schneiderman v. United States, supra, with reference to the fallacy of permitting the relitigation of the very facts that were put into issue at the time the certificate was granted in a hearing of this kind. There is nothing in this record that would justify a court in refusing to grant the petition of defendant for naturalization at this time. On the basis of this record the court would be compelled to find that defendant had behaved as a person of good moral character during the past five years.

6. The government has failed to prove that the certificate was fraudulently or illegally procured and accordingly a judgment may be entered dismissing the complaint.