**UNITED STATES v. ORRINO.**
Civ. A. No. 11185.

United States District Court
E. D. New York.
April 26, 1954.

Leonard P. Moore, U. S. Atty., E. D. New York, Brooklyn, N. Y., for plaintiff. Albert H. Buschmann, Asst. U. S. Atty., Jamaica, N. Y., of counsel.

Rocco J. Scalone, Corona, for defendant. Vine H. Smith, Brooklyn, N. Y., of counsel.

BRUCHHAUSEN, District Judge.

The plaintiff has brought this action to vacate and set aside the certificate of naturalization issued to the defendant, Dominico Orrino, also known as Domenico Orrino, upon the grounds that it was fraudulently and illegally procured. The defendant, an emigrant from Italy, was admitted to citizenship on March 27, 1930.

In his application for citizenship he stated under oath that he was not married, had no children, had continuously resided in the United States since 1913, and had never been absent from the country. In fact, however, he was married, had two children, and completely concealed his five-year absence from the United States, when asked if he had been absent. After such absence he reentered the United States as the son of a United States citizen named Gennaro Orrino who emigrated from Naples in 1894, and who was naturalized on October 29, 1904. The fact is that the defendant is the son of Antonio Orrino, who was never naturalized.

This is not a case of an isolated error or of inconsequential matters, arising from ignorance. Rather, it is a situation wherein every element entering into the procurement of citizenship is tainted by some degree of fraud and misrepresentation. It is further complicated by the fact that after the deeds were accomplished, the defendant, for all that appears, lived the life of an in-

dustrious, law-abiding, loyal and honest American. However, it is the manner and nature of the acquisition of citizenship which must be carefully reviewed. The testimony of the defendant in an examination on May 16, 1946, is as follows:

"Q. Mr. Orrino, how do you account for the fact that your naturalization certificate contains the statement that you were single on March 27, 1930, and you have just stated to me that you were married in February 1922? (Page 4.) A. Well, because I came here, she (meaning the defendant's wife) don't want to come. She wants to stay with my own mother so I did come over here and I take the citizenship papers and I said I was single."

That testimony discloses that the defendant knowingly made a false statement.

The defendant further testified at said examination:

"Q. I show you Form A–2214, Application for a Certificate of Arrival and Preliminary Form for Petition for Citizenship, dated October 21, 1929, and ask you if that is your signature appearing thereon? (Page 8.) A. (Examining) Yes, sir.

"Q. Was this form completely filled out by you? A. That's right."

This testimony is important on the question of defendant's comprehension at the time as it is related to the ensuing testimony on page 8, viz.:

"Q. Do you recall appearing before a Naturalization Examiner in 1930 just prior to your naturalization? A. Of course."

It is apparent that the defendant knew he was then under oath, as the following appears on page 8 of the examination:

"Q. He asked you to raise your right hand and swear to tell the truth? A. Yes, sir."

The defendant further testified with respect to his statements:

"Q. Did you tell him at that time you were married? A. No, sir. I said I was single because I got the first paper and I declared I was single when I got the first papers."

The examination continues on page 8 and refers to defendant's application for a Certificate of Arrival and Preliminary Form for Petition for Citizenship, as follows:

"Q. In answer to question 17 on this Form A–2214, the question reading, 'Have you been absent from the United States since the date of your arrival as stated on page 1 of this form?', you answered 'No', is that correct? A. That's correct. I said 'No'.

"Q. When you were questioned by the Naturalization Examiner and he asked you if you had ever been absent from the United States, what did you say? A. I say 'No'.

"Q. Why did you say 'No'? A. Because she (meaning the defendant's wife) wouldn't come here so what's the use of putting her on my citizenship paper? Just as well say I am single."

It is apparent that defendant completely understood the nature of the questions and deliberately gave misinformation. In the examination, the subject under discussion was shifted to the defendant's absences. The testimony on page 9 follows the same pattern:

"Q. Why didn't you reveal that you had returned to Italy in 1921 and stayed in Italy until late in 1924 or early in 1925? A. Well, I tried to get that citizenship papers and not put her (meaning defendant's wife) in my paper and that I was home at all. I came in 1913 and I never left the United States. That's what I told when I got my paper.

"Q. You knew at the time you told him that you were comitting

(sic) perjury? A. I don't know if I did or not.

"Q. But you knew you were lying? A. Well, I told him a lie. I don't say no.

"Q. And you were under oath, were you not? A. Yes."

It is thus apparent that the defendant under oath testified falsely and deliberately withheld information. The following question on page 9 is significant in that connection:

"Q. Isn't it a fact that you failed to disclose your marriage in 1922 because you wanted to hide the fact that you were absent from the United States? A. Well, yes, she don't want to come with me, just as well I lie, because I tell them I am single and not married."

The entire nature of defendant's actions came to attention when he applied for an immigration visa for his family and the truth was brought forth. Defendant's answer on page 13 as to whether he knew he testified falsely with respect to his residence shows his intention. The question reads as follows:

"Q. And you knew you testified falsely regarding your residence in the United States? A. That's right. If I can't get them here, let them stay there. That's why I try to get them over here, if I could. If I can't, why * * *."

On page 15, defendant once again stated that he testified falsely about his residence:

"Q. Didn't you testify that way in order to show that you were not out of the United States? A. That's right, and really I was out and I said I wasn't out."

The following pertinent testimony appears on page 16:

"Q. Is there anything further you wish to say? A. No, only know I am guilty on account of I say I was single when I got my citizenship papers. I told them a lie. If that don't go through * *

that's why I try to get my family here. If I can't get it through let them stay there. I know I done it. I am guilty. * * *"

Although the Court has examined and considered all of the exhibits, a list of the more pertinent ones and their probative contents should be here set forth.

1. Exhibit 11 is a marriage certificate showing that Domenico Orrino, then 23 years of age, was married to Bambina Martelli, then 17 years of age, on February 17, 1922.

2. Exhibit 12 reveals that Esterina Orrino, daughter of Domenico and Bambina Martelli Orrino was born on May 31, 1925, and it so appears from the records of the Registrar of Vital Statistics of Cantalupo nel Sannio in Italy.

3. Exhibit 5 is a Department Passport Application dated October 7, 1925, *for a person claiming citizenship through naturalization of husband or parent* in which Domenico Orrino swears that he was born on October 5, 1905, the son of Gennaro Orrino who emigrated from Italy in 1894, and who was naturalized on October 29, 1904. It is typewritten on the bottom thereof, that "he is single".

4. Exhibit 7 is a Declaration of Intention, dated October 18, 1927, wherein the defendant swore that he was not married.

5. Exhibit 8 is the Application for a Certificate of Arrival and Preliminary Form for Petition for Citizenship, dated October 21, 1929, wherein he swore that he was born on August 9, 1898 (see 3, supra) and that he was not married and could speak English, and had never been absent from the United States, and has continuously resided therein.

6. Exhibit 15 is a Petition for Citizenship wherein the defendant swore he was single.

7. Exhibit 14 is a Petition for Issuance of Immigration Visa sworn to by the defendant Domenico Orrino in December of 1945, whereby he sought the granting of visas to his wife and four children, stating that he was the son of

**572**

Antonio Orrino who was not naturalized. (See 3, supra.)

It is at once apparent that defendant has deliberately lied about the matters set forth above. There is no doubt that he lied about his marital status and his absence from the United States. There is no question but that he is the son of Antonio Orrino who was never naturalized and yet his Department Passport Application (3 above) dated October 7, 1925, is for a person claiming citizenship through naturalization. When the defendant returned from Italy his papers read that he was the son of Gennaro Orrino who was naturalized on October 29, 1904, rather than the son of Antonio Orrino, who was never naturalized, and that he resided in Italy from birth until date. As to all of this defendant pleads that he did not understand the English language, which the Court does not believe to be the fact. It is apparent from the testimony that defendant was fully aware of his acts.

The fact that it might have been simpler to have his later papers conform to his earlier paper wherein he stated he was single, does not provide a proper excuse for withholding his true marital status. The concealment of the marriage was wilful and deliberate.

■ Few things are more precious than citizenship. It should not be taken away without clear, unequivocal and convincing evidence warranting revocation. Schneiderman v. United States, 320 U.S. 118, 159, 63 S.Ct. 1333, 87 L.Ed. 1796. The evidence clearly meets the requirements imposed by Schneiderman v. United States, supra, and justifies the same result as was arrived at in United States v. Marcus, D.C., 1 F.Supp. 29, and United States v. Mira, D.C., 41 F. Supp. 224. It is not such a case as United States v. Jackson, D.C., 55 F. Supp. 517, 520, wherein the defendant testified to a marital fact under the mistaken belief it was the truth. See also United States v. Pistilli, D.C., 119 F. Supp. 237. On the materiality of the marital status see United States ex rel. Karpay v. Uhl, 2 Cir., 70 F.2d 792, approving United States v. Marcus, cited supra.

■■ Although defendant's first entry into the United States in 1913 was legal, his subsequent reentry in 1926 as the son of a United States citizen was illegally and fraudulently accomplished. While in Italy during his concealed absence he represented himself to be the son of Gennaro Orrino, a naturalized citizen, in order to reenter the United States. No valid statutory residence prior to naturalization may be founded on an illegal entry. Werblow v. United States, 2 Cir., 134 F.2d 791; In re Scriver, D.C., 9 F.Supp. 478. The question of residence is actually superfluous in the light of the fraudulent methods used throughout the proceeding as in United States v. Goldstein, D.C., 30 F. Supp. 771, 773, wherein the defendant represented himself to be his cousin. In the case at bar, the defendant knowingly reentered the United States in a capacity other than that which he possessed. Fraud connotes perjury, falsification, concealment and misrepresentation. Knauer v. United States, 328 U.S. 654, 657, 66 S.Ct. 1304, 90 L.Ed. 1500. Such actions constitute a lack of good moral character. See United States v. Accardo, D.C., 113 F.Supp. 783, 786, and cases cited therein.

These clumsy attempts made to obtain citizenship, so far as the record discloses, have been overshadowed by the exemplary life led by the defendant since the time of his admission to citizenship in 1930. Almost a quarter of a century has elapsed since the last of the false statements were made by the defendant. He is now 55 years of age. He has worked hard, saved a considerable sum of money, and supported his family in Italy and responded to the call for defense workers when needed. He has been separated from his family for all these years. The Court is strongly of the opinion that great leniency should be extended to the defendant, and that every opportunity be given to him to regain the citizenship that this Court reluctantly decrees should be cancelled.

This opinion constitutes the findings of fact, required by the rules.

Conclusion of Law

That the certificate of naturalization, and order of the Supreme Court of the State of New York, held in and for the County of Queens, at Jamaica, New York, entered on the 27th day of March, 1930, whereby the defendant was admitted to become a citizen of the United States of America, be vacated, cancelled and set aside, and that the said defendant be forever restrained and enjoined from setting up or claiming any rights, privileges, benefits or advantages whatsoever under the said order and said certificate of naturalization.