Eddie V. Morgan v. Commissioner.
Morgan v. Commissioner
Docket No. 42934.
United States Tax Court
T.C. Memo 1954-189; 1954 Tax Ct. Memo LEXIS 57; 13 T.C.M. (CCH) 1027; T.C.M. (RIA) 54295; November 8, 1954, Filed *57 Eddie V. Morgan, pro se, Robert J. Fetterman, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax and additions to the tax, as follows: Year
Deficiency
50% penalty
1948 $373
$186.50
1949
373
186.50
1950
391
195.50
The questions presented are: (1) Whether the respondent erred in determining that petitioner understated his income for 1948, 1949, and 1950, by the respective amounts of $1,180.06, $2,890.95, and $1,976.25; (2) Whether the respondent erred in determining that petitioner is not entitled to exemption credits for the years 1948 and 1949 for Annie Morgan and for the year 1950 for Lulu Morgan, each being claimed as a wife in petitioner's separate income tax returns for those years; (3) Whether the respondent erred in determining that petitioner is not entitled to a dependency credit for 1948 for Harriet Smith, claimed by petitioner as his mother; and (4) Whether the respondent erred in determining additions to tax for fraud for each of the taxable years involved. Findings of Fact Petitioner, a resident of Muskegon Heights, Michigan, filed his *58 individual income tax returns for 1948, 1949, and 1950, with the collector of internal revenue for the district of Michigan, at Detroit. For unknown periods of time during 1948 and 1949, petitioner worked for a foundry and reported on his income tax returns for those respective years total income in the amounts of $1,921.94 and $211.05, as wages received. For an unknown period of time during 1950 petitioner worked for a railroad, reporting total income of $1,125.75, as wages received. In March 1947 petitioner purchased a lot in Emerson Heights, Muskegon, Michigan, and commenced construction of a building for use as a poolroom. Petitioner began business about August 1, 1949. His business equipment consisted of 5 pool tables, racks, cues and balls, a small lunch counter, a juke box, and miscellaneous furniture. He employed a man to help operate the business during the remainder of 1949 and throughout 1950. Petitioner purchased poolroom equipment with the proceeds of a mortgage dated January 8, 1949, for $475, secured by the real property and on which monthly payments of $30 were to be made. On August 1, 1949, this mortgage was discharged and a new mortgage was given, also secured *59 by the real property, requiring monthly payments of $40. Petitioner did not report any income from his poolroom business in his income tax returns for 1948, 1949, or 1950. On March 10, 1947, petitioner purchased a house in Muskegon, Michigan, for which he paid $2,600 to $2,700 in cash. On the same day petitioner withdrew $2,000 from his savings account in the Hackley Union National Bank of Muskegon. On May 20, 1948, petitioner executed a mortgage for $660. In March 1950, this mortgage was discharged and a new mortgage was given on the same property for an additional loan of $500, together with the unpaid balance of the old mortgage. Petitioner paid $133.30 in 1948, $225 in 1949, and $225 in 1950 on these mortgages. During each of the years 1948, 1949, and 1950, petitioner expended unknown sums for furniture for the house. On March 3, 1947, petitioner opened a savings account in the Hackley Union National Bank, at Muskegon, with a deposit of $2,000. Deposits totalling the following amounts were made by petitioner during the periods indicated: Period
Amount
1- 1-48 through 12-31-48
$ 65
1- 1-49 through 8- 1-49
255
8- 2-49 through 9-26-50
9-27-50 through 12-31-50
618
*60 The end-of-the-year balances in the account were as follows: Year
Amount
1947
$ 25
1948
27
1949
82
1950
700
In the fall of 1951 respondent's agents interviewed petitioner for the purpose of examining his records with respect to the poolroom business. Petitioner produced no records. Respondent then reconstructed petitioner's income for each of the taxable years involved by the use of a cash expenditures analysis based upon the following estimates furnished by petitioner: Item
Weekly
Monthly
Yearly
Food: Groceries, etc.
$23.50
Outside meals
4.50
Rent
Repairs to home
Utilities: Gas, electricity, fuel
$11.00
$ 26.00
Laundry and dry
cleaning
9.00
Domestic help
Home furnishings
Auto expense
4.00
Transportation (car-
fare)
Vacation - travel
85.00
Recreation and enter-
tainment
Education
Magazines, papers,
books
2.50
Insurance
2.00
Dues, club, lodge,
union
Personal: Tobacco, liquor
lunches
7.50
Taxes: Federal
State
131.00
Local
Contributions
52.00
Medical expenses
Gifts
Other
Total
$51.00
$13.00
$294.00
Summary: Weekly expenses ($51X52 weeks)
$2,652.00
Monthly expenses ($13X12 months)
156.00
Annual expenses
294.00
Total
$3,102.00
*61 By the use of the cash expenditures analysis basis the respondent determined that the petitioner had a gross income of not less than $3,102 in each of the taxable years 1948 to 1950, inclusive, and increased the amount reported on his respective returns by the amount of $1,180.06 for 1948, $2,890.95 for 1949, and $1,976.25 for 1950. In his separate income tax returns for 1948 and 1949 petitioner claimed an exemption credit for Annie Morgan as his wife. In his separate return for 1950 petitioner claimed an exemption credit for Lulu Morgan as his wife. For the year 1948 petitioner also claimed a dependency credit for Harriet Smith as his mother. All the claimed deductions were disallowed. The petitioner had unreported income in the taxable years as follows: Year
Unreported income
1948
$1,180.06
1949
2,890.95
1950
1,976.25
The petitioner has failed to establish that he is entitled to a marital deduction in the taxable years 1948, 1949, and 1950. Petitioner has failed to establish that he furnished more than one-half the support of his mother, Harriet Smith, in the taxable year 1948. Part, if not all, of the deficiencies in petitioner's income tax for each *62 of the years 1948, 1949, and 1950, was attributable to fraud with intent to evade tax. Opinion LEMIRE, Judge: The first question presented is whether the respondent erred in determining that petitioner had additional unreported income for 1948, 1949, and 1950. In the absence of adequate books and records from which petitioner's income could be accurately determined, respondent used a cash expenditures analysis based upon estimates furnished by petitioner to reconstruct his income. Petitioner's own estimate of his annual cash expenditures totalled $3,102 for each of the years in question. The record establishes that during each of the taxable years petitioner expended additional and unknown amounts not included in the estimate of $3,102, such as rent during 1948, mortgage payments, construction and equipment costs for the poolroom, furniture for his home, medical expenses, gifts to women friends, and small expenditures for other items. Petitioner makes no contention that these cash expenditures were made from accumulated but undeposited funds, from mortgage loans, or from the sale of real property or other assets by petitioner during the taxable years involved. The small amounts *63 obtained from mortgage loans and the petitioner's deposited savings funds and end-of-year balances were wholly inadequate to account for the conceded annual expenditures. We are of the opinion that the sums expended during each of the taxable years were from current income derived from his poolroom business, gambling, or other undisclosed sources. We have, therefore, found as a fact that the petitioner had unreported income in the amounts determined by the respondent for each of the taxable years in question. The second question presented is whether the respondent erred in determining that petitioner is not entitled to an exemption credit of $600 for each of the years 1948 and 1949 for Annie Morgan and for the year 1950 for Lulu Morgan, each being claimed as a wife in petitioner's separate income tax returns for those years. Sec. 25(b)(1)(A), I.R.C. (1939). The marital status of a taxpayer for federal income tax purposes is determined by applicable state law. Petitioner, a resident of Michigan, testified that he was living with a common-law wife during 1948, but did not state that such a relationship existed during 1949 or 1950. A common-law marriage is recognized in the State *64 of Michigan if it is shown that there was a present agreement between the parties to take each other as husband and wife, followed by cohabitation. Grammas v. Kettle, 306 Mich. 308, 10 N.W. (2d) 895; In re Tatar's Estate, 307 Mich. 342, 11 N.W. (2d) 912. Petitioner's confused and contradictory testimony as to his relationship with Annie Morgan and Lulu Morgan, and as to the periods of time in which he lived with each of them, convinces us that no recognizable valid common-law marital relationship did exist with either claimed "spouse." Furthermore, since respondent challenges petitioner's marital status it is encumbent on petitioner to show, as required by the statute, that the person claimed as a spouse had no gross income and was not the dependent of another during the respective taxable years. This he has not done. We hold that the petitioner has failed to carry the burden of showing that he was entitled to a marital exemption credit for any of the taxable years 1948 to 1950, inclusive. On this issue the respondent is sustained. The third question presented is whether petitioner is entitled to a dependency credit for 1948 for Harriet Smith, claimed *65 to be his mother. In order to be entitled to such a dependency credit petitioner has the burden of establishing that the amounts provided amounted to over one-half of the dependent's support, that the dependent had less than $500 income, and that the dependent was a close relative by blood or marriage. Petitioner testified that the Harriet Smith claimed as his mother lived alone in Arkansas and had no outside income. He further testified that he sent $15 to $18 in cash each month during 1948 to his mother's grocer and that he also paid her fuel bills for cordwood, but was unable to remember how much he had spent for fuel in the taxable years. He paid no medical bills for her in 1948 and offered no testimony as to other amounts expended either by himself or Harriet Smith for clothing or other necessities. There was no showing of the total cost of the mother's support. In our opinion, the evidence is too indefinite and insufficient to carry the burden of showing that the petitioner in the taxable year 1948 furnished more than one-half the support of his mother and, therefore, the respondent's disallowance of the claimed dependent credit is sustained. The final issue is whether *66 any part of any deficiency determined by respondent in petitioner's income tax for each of the years 1948, 1949, and 1950, is due to fraud with intent to evade tax. We think it clear from petitioner's own estimates furnished to respondent's agent in the fall of 1951 and from the other evidence revealed by the record that petitioner's expenditures far exceeded his reported income for each of the taxable years involved. He reported only sums received from wages, and totally concealed any disclosure of income from his poolroom business. He failed to produce any book or record with respect to that business or any other income-producing transaction. After a careful study of all the facts of record and giving consideration to our observation of the petitioner as he testified and the inferences reasonably to be drawn therefrom, we conclude that petitioner's failure to report his true income was wilful, deliberate, and with the intent to evade the payment of tax. Accordingly, we hold that respondent has established by clear and convincing proof the necessary fraudulent intent. We, therefore, sustain his action in assessing the 50 per cent addition to the tax for fraud for each of the taxable *67 years 1948, 1949, and 1950. Decision will be entered for the respondent.